## CALHOUN v. LITTLE.

1. The Town of Waresboro derives its authority to exercise corporate functions from an act of the General Assembly passed on December 9, 1893 (Acts 1893, p. 335), granting a new charter to such town. Under this act an ordinance which confers upon the police court of the town authority to punish by imprisonment without giving persons convicted of offenses against the town an opportunity to pay a fine is void for want of authority in the town council to pass it.

2. In all cases where judges of courts of general jurisdiction are exempt from civil liability in damages for their judicial acts, presiding officers of courts of limited jurisdiction are likewise exempt. It follows, therefore, that where the presiding officer of a municipal court judicially determines that a given ordinance is valid, though in fact it is void for want of authority in the town council to pass it, he will not be liable in damages to a person convicted in his court of an offense against the town and punished under such ordinance by imprisonment without having been given an opportunity to pay a fine, provided the court in which such person is convicted has jurisdiction of the subject-matter of the offense.

3. Where a section of the code has been codified from a decision of this court, it will be construed in the light of the source from which it came, unless the language of the section imperatively demands a different construction.

(a) Section 752 of the Political Code has no application to acts of a member of a town council when he is presiding in a police court which is authorized by the charter of the town.

4. The principles above announced control the case. There was no material error in the charges complained of. The evidence amply warranted the verdict, and there was no error in refusing a new trial.

Argued November 22, — Decided December 23, 1898.

Action for false imprisonment. Before Judge Sweat. Ware superior court. November term, 1897.

*Hitch & Myers,* for plaintiff.    *Leon A. Wilson,* for defendant.

Cobb, J. On June 26, 1896, Little, as mayor pro tem. of the Town of Waresboro, tried Calhoun upon the charge of violating the following ordinance of the town: "It shall be unlawful for any person or persons to engage in fighting or riotous conduct within the corporate limits of the Town of Waresboro,

or resist or obstruct the marshal or any policeman while in the discharge of their official duties." The accused was convicted, and the following sentence was passed upon him: "After hearing the evidence in the above-stated case, it is ordered and adjudged by the court that the defendant be kept in the jail of the Town of Waresboro for three days." It appears from the minutes of the town council that this sentence was afterwards commuted by the officer who tried the accused to imprisonment for one day. This sentence was passed pursuant to the following ordinance: "Any person who shall commit any or either of the offenses hereinbefore mentioned . . shall, on conviction for each offense, be sentenced to pay a fine of not less than one dollar nor exceeding twenty dollars, or imprisonment and work on the public streets not exceeding thirty days." The ordinances herein quoted were passed in 1888. The present suit is an effort on the part of Calhoun to recover damages from Little on account of the alleged illegal detention of the plaintiff in the town jail. The petition alleges that the sentence above quoted was without authority of law, and that the imprisonment of petitioner thereunder was malicious and in violation of law; that petitioner had violated no ordinance of the town, and that the conviction and sentence was a wilful and malicious persecution. The petition further alleges that efforts were made on the part of friends of petitioner to give bond or deposit any sum of money required to enable him to have the sentence reviewed and set aside, but that these efforts were unavailing. The defendant answered, denying that the sentence and imprisonment thereunder were malicious or without authority of law, and averring that his acts were in furtherance of law and order. The allegations in the petition as to efforts to give bond in order to have the sentence reviewed are also denied. At the trial the evidence showed that the defendant was regularly elected a member of the town council on June 22, 1896. From an extract of the minutes of the council it appears that the defendant was elected mayor pro tem. on July 6, 1896; but there was testimony showing that he was mayor pro tem. at the date of the trial of the plaintiff for the alleged violation of the ordinance of the town. The defendant testified that

no bond was ever offered him either by Calhoun or by any one in his behalf. The jury returned a verdict for the defendant; and plaintiff's motion for a new trial being overruled, he excepted.

1. Were the ordinances under which the plaintiff in error was convicted and sentenced to imprisonment by the defendant valid at the time of the trial? These ordinances were passed under authority of a charter granted to the town by the superior court, the provisions of which charter will be found in sections 685–710 of the Political Code. An examination of these provisions will show that the ordinances were valid at the time of their passage. In 1891 an act was passed prohibiting the General Assembly from granting charters to towns of less than two thousand inhabitants, and conferring upon the superior courts exclusive power to grant such charters. Acts 1890–91, p. 190. This act was repealed on December 1, 1893. Acts of 1893, p. 65. In the case of *Fullington* v. *Williams,* 98 *Ga.* 807, this act was held to be constitutional and valid. On December 9, 1893, a new charter was granted the Town of Waresboro by the General Assembly. Acts 1893, p. 335. This act has never been repealed either expressly or by implication, nor has its validity been in any way impaired. From it, therefore, the Town of Waresboro must derive whatever authority it has to exercise corporate functions. This act repeals all former charters granted to the town, but provides that all ordinances then in force and not inconsistent with its provisions shall be valid and of force until amended or repealed by the mayor and aldermen of the town. An examination of the act will show that the ordinance which defined the offense for which Calhoun was tried is perfectly consistent with its provisions. Is the ordinance which prescribes the punishment to be inflicted upon persons convicted of offenses against the town also consistent with the provisions of the act? Section 11 of the act is as follows: "Be it further enacted, that the mayor or mayor pro tem. of said town shall hold a police court in said town at any time for the trial and punishment of all violators of their ordinances, by-laws, rules and regulations of said town, the punishment inflicted not to exceed a fine of one hundred dollars, or, in default of the payment of said fine and costs, by labor

on the streets of said town or public works of said town not to exceed sixty days, or confinement in the common jail of the said town not to exceed sixty days." It needs no argument to show that an ordinance of the town which allows imprisonment without first giving the person convicted an opportunity to pay a fine is rendered void by this section of the act.

2. The question therefore arises: Is the defendant liable to the plaintiff in damages for inflicting a punishment upon him under a void ordinance? The court over which the defendant presided had jurisdiction of the person of the plaintiff and jurisdiction to try and punish him for the offense with which he was charged. The defendant has only exceeded his authority in fixing the punishment. It is universally conceded that judges of courts of superior and general jurisdiction are exempt from liability in damages for judicial acts, even when such acts are in excess of their jurisdiction. This doctrine has become firmly fixed in the jurisprudence of both England and the United States. Upon its strict application depends, to a very great extent, the usefulness of courts and the fearless and impartial administration of justice. See Broom's Com. 103–106; 7 Am. & Eng. Enc. L. 668; Pratt v. Gardner, 2 Cush. 63; 2 Hilliard, Torts, 161; Cooley, Torts, 472 et seq.; Bishop, Non-Contract Law, § 781; Randall v. Brigham, 7 Wall. 523; Bradley v. Fisher, 13 Wall. 335. But it is said that the law affords no protection to presiding officers of inferior courts when they exceed their jurisdiction. Piper v. Pearson, 2 Gray, 120; Vanderpool v. State, 4 Ark. 174; Tracy v. Williams, 4 Conn. 107; 7 Am. & Eng. Enc. L. 669. Judge Cooley, after stating that there is a distinction as to liability for judicial acts between judges of courts of general and those of limited jurisdiction, gives as the reasons for this distinction the following: "The inferior judicial officer is not excused for exceeding his jurisdiction, because, a limited authority only having been conferred upon him, he best observes the spirit of the law by solving all questions of doubt against his jurisdiction. If he errs in this direction, no harm is done, because he can always be set right by the court having appellate authority over him, and he can have no occasion to take hazards so long as his decision is sub-

ject to review. The rule of law, therefore, which compels him to keep within his jurisdiction at his peril, can not be unjust to him, because, by declining to exercise any questionable authority, he can always keep within safe bounds and will violate no duty by doing so. Moreover, in doing so he keeps within the presumption of law, for these are always against the rightfulness of any authority in an inferior court, which, under the law, appears doubtful." Cooley, Torts, 491. We are unable to appreciate the force of the reasons embodied in the above quotation, which contains all the arguments we have been able to find in favor of the distinction. On the other hand we quite agree with the Supreme Court of Iowa, when it says in Thompson *v.* Jackson, 27 L. R. A. 92, 95, that, "After an exhaustive examination of the cases which make this distinction, we have to say that we do not think they are founded upon grounds which can be sustained by any logical or reasonable argument." In the case just referred to it was held, that "A justice of the peace, like judges of the superior courts, is protected from personal liability for judicial acts in excess of his jurisdiction, if he acted in good faith believing he had jurisdiction." Mr. Bishop in his work on Non-Contract Law, § 783, commenting upon this distinction says: "But, in reason, if judges properly expected to be most learned can plead official exemption for their blunderings in the law, *a fortiori* those from whom less is to be expected and who receive less pay should not be compelled to respond in damages to their mistakes honestly made after due carefulness." And this, we think, is a complete answer to all of the reasons given why such distinction exists. In Bell *v.* McKinney, 63 Miss. 187, it was held that where a magistrate had authority to require a person brought before him to give bond to appear at the circuit court, but under an erroneous judgment as to the extent of his authority, and in good faith, tried such person and upon his conviction sentenced him to pay a fine or be imprisoned, the magistrate was not liable in damages to the person aggrieved. In the case of Henke *v.* McCord, 55 Iowa, 378, the facts were almost identical with those in the present case. It was there held, that "A justice of the peace who enforces an ordinance which

is void for want of power in the city to enact it can not be held liable therefor in a civil action." The distinction between the liability of presiding officers of inferior and those of superior courts is mentioned, but it was not necessary to decide whether or not the distinction was rational. We have seen, however, that this same court in a more recent case declared in very vigorous terms that the distinction was utterly illogical. In Brooks *v.* Mangan, 86 Mich.. 576, it was held that a justice of the peace who, in the exercise of his honest judgment, holds an unconstitutional ordinance constitutional, is not liable for such an error of judgment. In the opinion Grant, J., uses this language: "These inferior tribunals should be left to the exercise of their honest judgment, and when they have so exercised it they are exempt from civil liability for errors." In Clark *v.* Holbridge, 18 Barb. 61, it was held that a justice of the peace who inflicted a larger fine than the law required would be protected by the principle of judicial irresponsibility. See also McCall *v.* Cohen, 16 S. C. 445: Scott *v.* Fishblate (N. C.), 30 L. R. A. 696; Lange *v.* Benedict (N. Y.), 29 Am. Rep. 80; Austin *v.* Vrooman (N. Y.), 14 L. R. A. 138. These decisions settle, we think, beyond doubt, that no good reason exists in law why presiding officers of inferior courts should not be measured by the same rules with respect to liability for their judicial acts, as judges of courts of general jurisdiction.

We must not be understood, however, as ruling that these officers have immunity from civil liability in all cases. As was said in Bradley *v.* Fisher, 13 Wall. 335, 352, "Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible." But all judicial officers stand on the same footing and must be governed by the same rules. It follows from what has been said, that where the court has jurisdiction of the subject-matter of the offense, and the presiding officer erroneously decides that the court has jurisdiction of the person committing it, or commits an act in excess of his jurisdiction, he will not be liable in a civil action for damages. But where there is a clear absence of jurisdiction over the sub-

ject-matter, the officer will be liable for exercising it, provided such want of jurisdiction is known to him. There is nothing in section 3852 of the Civil Code to conflict with the ruling made in the present case. That section is as follows: "If the imprisonment is by virtue of a warrant, neither the party bona fide suing out, nor the officer who in good faith executes the same, is guilty of false imprisonment, though the warrant be defective in form, or be void for want of jurisdiction. In such cases the good faith must be determined from the circumstances of each case. The same is true of the judicial officer issuing the warrant; the presumption being always against him as to good faith, when he has no jurisdiction." The section seems to provide that a judicial officer who in bad faith issues either a defective or a void warrant will be liable in an action for false imprisonment at the instance of the person imprisoned thereunder. It is, however, limited by its very terms not only to an act done out of court, but one which, though to some extent judicial, is largely ministerial in its nature; and in no event can it have any application to the acts of a judicial officer while presiding in court and as a court is passing upon a question involving the jurisdiction of his court and which he is bound to decide. In the present case the court over which the defendant in error presided had jurisdiction of the subject-matter of the offense, and of the person of the plaintiff in error. The sentence was passed pursuant to a void ordinance it is true, but on the defendant in error in the first instance was cast the duty of determining whether or not this ordinance was valid. Acting in a judicial capacity, he in effect decided that the ordinance was valid. True the question was not directly made before him, but he necessarily held it to be valid, because this was the only source from which he could derive his authority. To hold that he was liable in a civil action for damages for erroneously deciding that this ordinance was valid, would be, in effect, to hold that the law makes it the duty of an officer to decide a question and then punishes him for not deciding it correctly. The law never does this. The presiding officer of a court clothed with authority to decide questions of law which may come before it will be protected in

the exercise of this authority, however erroneous this decision might be. It is far better for a few innocent persons to suffer than for the ends of justice to be thus hampered.

3. It is contended, however, by counsel for the plaintiff in error, that section 752 of the Political Code makes a different rule applicable to the defendant in error. That section is as follows: "Members of the council and other officers of a municipal corporation are personally liable to one who sustains special damages as the result of any official acts of such officer, if done oppressively, maliciously, corruptly, or without authority of law." By reference to the margin of the page on which this section appears it will be seen that it is codified from a decision of this court. Unless the language of the section imperatively requires a different construction, it will be presumed that the General Assembly in adopting it intended merely to adopt the principle of law announced in the decision from which it is taken. See in this connection Sutherland, Statutory Cons. § 300. The decision from which the section is codified is *Pruden* v. *Love*, 67 *Ga.* 190. In that case it appears that the town council, at a meeting appointed for that purpose and of which the plaintiff (Love) had no notice, condemned as a nuisance the house of the plaintiff and had it torn down without giving him a hearing. The court held that for this act the members of the town council were personally liable in damages to the owner of the building. Chief Justice Jackson in the opinion says: "Whilst, therefore, we hold with the judge below, that the mayor and council could not be held personally liable unless they acted either maliciously, corruptly, oppressively, or without authority of law, yet we agree with him, too, in the opinion evinced by his denial of a new trial, that there is sufficient evidence to uphold a verdict that they did act without complying substantially with the law in a most essential element of a fair trial — notice of time and place — and thereby acted so as to oppress the defendant in error." The mayor and council in that case were not a court, and were not held liable because when sitting as a court they made an erroneous decision. The section of the code it will be noticed uses the expression "official acts," and can have no application

to a member of a town council when presiding as a judge over the police court of the town.

4. It is not necessary to express any opinion as to whether or not the defendant in error would have been liable for a refusal to accept a valid bond tendered by the plaintiff in error for the purpose of having the decision reviewed, as the evidence on this point was conflicting and no ruling of the trial judge on this point was excepted to. Under the views above expressed, if any errors were committed by the presiding judge in charging the jury, such errors were immaterial.

*Judgment affirmed. All the Justices concurring, except Little, J., who was disqualified.*